*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO AUGUST 20, 2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *  18-cr-110-JD
           v.                   *  May 8, 2019
                                *  11:05 a.m.
ZACHARY BENOIT                  *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JOSEPH A. DiCLERICO, JR.


Appearances:


For the Government:        Helen W. Fitzgibbon, AUSA
                           United States Attorney's Office



For the Defendant:         Dorothy E. Graham, Esq.
                           Federal Defender's Office



Probation Officer:         Theresa Duncan



Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603)225-1442

```
 1                    P R O C E E D I N G S

 2              THE CLERK:  The Court has before it for

 3    consideration today a sentencing hearing in criminal

 4    case 18-cr-110-01-JD, United States vs. Zachary Benoit.

 5              THE COURT:  Good morning.

 6              MS. FITZGIBBON:  Good morning.

 7              MS. GRAHAM:  Good morning.

 8              THE COURT:  Ms. Graham, the Court has a

 9    Presentence Investigation Report before it.  Have you

10    had a chance to review that with your client?

11              MS. GRAHAM:  Yes, your Honor.

12              THE COURT:  Now, you had several guideline

13    issues that you would like to take up.

14              MS. GRAHAM:  I have, your Honor, and --

15              THE COURT:  Let me just interrupt.

16              MS. GRAHAM:  Sure.

17              THE COURT:  It might save you a little time.

18              As I understand it, your first issue relates

19    to the use of a computer and as I understand it, the

20    government doesn't have any objection to making that

21    adjustment.

22              MS. FITZGIBBON:  No objection to that, your

23    Honor.

24              THE COURT:  So the Court will do that.

25              MS. GRAHAM:  Thank you.
```

1          THE COURT:  All right.

2          MS. GRAHAM:  As to the second objection, your

3    Honor, which was for the five levels for trading for --

4    for benefit or for -- in return for other pornography,

5    in reviewing my client's statement and the transcript,

6    I'm -- I withdraw my objection because I think that the

7    evidence supports that by preponderance of the evidence

8    and I would come back to that in more of a variance

9    argument in terms of how much of that pornography made

10   up the -- or what percentage of that actually made up

11   the collection.

12          So I agree that's more of a variance argument

13   at this point.

14          THE COURT:  All right.

15          So with respect to the guidelines then, the

16   Court will -- in the report, line 28 or paragraph 28,

17   the Court will strike the two-level increase.

18          In paragraph 33, the adjusted offense level

19   becomes 38.

20          In paragraph 37, the total offense level

21   becomes 35.

22          Do counsel agree with that?

23          MS. GRAHAM:  Yes.

24          MS. FITZGIBBON:  Yes, your Honor.

25          THE COURT:  And then the probation officer

1   will make the necessary changes later on in the report.

2            THE PROBATION OFFICER:  Yes, your Honor.

3            THE COURT:  So at offense level 35, Criminal

4   History Category I, that yields a guideline range of 168

5   to 210 months.

6            Does the government have a recommendation?

7            MS. FITZGIBBON:  Yes, your Honor.  And if I

8   may, before --

9            THE COURT:  Yes.

10            MS. FITZGIBBON:  -- we move on from the PSR --

11            THE COURT:  Yes.

12            MS. FITZGIBBON:  -- just to be a stickler, it

13   does not impact the guideline range at all, but I

14   notified probation and defense counsel yesterday that I

15   had overlooked -- and I apologize for the lateness --

16   just an error in number of images in paragraph 15 --

17            THE COURT:  Okay.

18            MS. FITZGIBBON:  -- of the PSR.  The report

19   actually found that -- once all of the thousands of

20   images were reviewed, it was found that there were 299

21   still images and 418 videos identified as known.

22            And, again, this does not impact the guideline

23   range at all.  I just wanted to bring that to the

24   Court's attention.

25            THE COURT:  So what was that?

1          MS. FITZGIBBON:  It was 299 images, 418

2   videos.

3          THE COURT:  All right.

4          All right.  Did you have any comment on that,

5   Ms. Graham?  I'll give you a moment to digest it.

6          MS. GRAHAM:  I -- I think that paragraph 16

7   discusses the extent of the images and so I -- I don't

8   think that it really makes any difference to the Court's

9   analysis.

10          THE COURT:  All right.

11          MS. FITZGIBBON:  Thank you, your Honor.

12          THE COURT:  All right.

13          MS. FITZGIBBON:  So, your Honor, with respect

14   then to the government's recommendation, the government

15   does recommend a sentence of 168 months.  The

16   government's argument for this is largely set forth in

17   our sentencing memorandum.

18          As the Court is aware, this was an extensive

19   collection, an extremely large collection of child

20   pornography, including some of the worst, most violent

21   and disturbing images known to law enforcement involving

22   the horrific abuse of multiple children, including

23   babies and toddlers.

24          The defendant did not keep these images to

25   himself, but was involved, as the Court is aware, with

1    sharing and further putting these images out there into

2    the public and to -- so that he could receive more of

3    these awful images.

4              For all of the reasons, your Honor, set forth

5    in our sentencing memorandum, the government feels that

6    a sentence of 168 is the appropriate sentence in this

7    case.

8              Thank you.

9              THE COURT:  Thank you.

10             Ms. Graham.

11             MS. GRAHAM:  Thank you, your Honor.

12             Your Honor, part of my argument, I think, will

13   incorporate some of the arguments that I will be making

14   in terms of the conditions of supervised release, so if

15   I could address that as I'm making my sentencing

16   argument.

17             THE COURT:  Yes.

18             MS. GRAHAM:  The defense obtained a highly

19   respected expert to conduct an evaluation in this case

20   and Mr. Benoit was extremely forthcoming in that

21   evaluation.

22             I think that the government and probation have

23   placed great weight on an encounter that Mr. Benoit had

24   when he was approximately eight years old.  On page 13

25   of Dr. Guidry's report, she states, quote:  His limited

1  prepubertal sexual misconduct with his younger sister

2  when he was eight does not constitute a sexual contact

3  offense that would suggest an increased risk for future

4  contact sexual offense due to the prepubertal nature of

5  the acts.

6          Dr. Guidry goes on to say, quote:  There is no

7  data to indicate that he has ever approached a child for

8  sex, has ever engaged in sex with a child as an

9  adolescent or adult, or that he appears to believe that

10 children are his emotional and/or social sexual equals.

11 As such, Dr. Guidry finds that there is limited data to

12 suggest that Mr. Benoit presents a risk of committing a

13 contact sexual offense.

14         And, notably, in her conclusion she states:

15 He presents a relatively low risk for recidivating with

16 a contact sexual offense as he does not present with

17 factors consistent with those that would indicate he

18 presents an elevated risk to commit a sexual contact

19 offense.

20         And I start off with that information, your

21 Honor, because the government presents no evidence to

22 refute that.  They've had this evaluation for -- I

23 believe since September of 2018.  They've not presented

24 their own expert's report or provided expert testimony

25 to this Court.

1          So, accordingly, I believe that the Court

2     should give little weight to any opinions that are not

3     based on an expert's review of Dr. Guidry's evaluation

4     or the facts in this case.

5          THE COURT:  Well, the doctor does qualify that

6     statement, though, by saying that:  I would opine that

7     his risk for sexual reoffense by virtue of committing an

8     online sexual offense should be considered elevated if

9     untreated, but manageable if his psychological

10     vulnerabilities are adequately addressed in treatment.

11          So the doctor qualifies that.

12          MS. GRAHAM:  I think she qualifies the

13     online --

14          THE COURT:  Yes.

15          MS. GRAHAM:  -- potential --

16          THE COURT:  Right.

17          MS. GRAHAM:  -- to recidivate, not --

18          THE COURT:  Yes, the online.

19          MS. GRAHAM:  Yes.  And I agree with that, that

20     that's what the report says --

21          THE COURT:  All right.

22          MS. GRAHAM:  -- and I'm just making a

23     distinction between this was not a hands-on offense, nor

24     does she suggest in her evaluation that he is a high

25     risk to commit a hands-on sexual offense.  But I do

1    concur with the Court that without treatment, he poses

2    an elevated risk.

3          But I think that what's important in that

4    evaluation, and I will further discuss that, is his --

5    his response to treatment and her opinion that he will

6    likely be successful with rehabilitation.

7          Specifically as to the sentence, your Honor, I

8    think my client has had or has lived a relatively

9    sheltered life.  He lived at home until the age of 24

10   when he moved out to live with his girlfriend and as a

11   result of this investigation and, of course, his own

12   actions, he's had no contact with his own child or the

13   child's mother.  The child is in the sole custody of the

14   child's mother and she will get to decide if or when

15   Mr. Benoit will have contact with his child.

16          Although Mr. Benoit has not furthered his

17   education, he's maintained stable employment for most of

18   his life, specifically during pretrial supervision.

19          I think many factors support that a 60-month

20   sentence is appropriate in this case.  First of all,

21   Mr. Benoit was incredibly cooperative with the

22   investigation.  He insisted -- assisted in his own

23   prosecution by making admissions and telling police

24   where certain items could be found on those devices and

25   sat down for a full interview.

1          He has been compliant with federal supervision

2    and the conditions of this Court.

3          Again, as the Court has already mentioned,

4    Dr. Guidry has suggested that his risk for sexual

5    reoffense of an online sexual offense should be

6    considered elevated if untreated, but manageable if his

7    psychological vulnerabilities are adequately addressed

8    in treatment.  So in the context of appropriate

9    treatment, his prognosis is positive, she explains.

10         He has a supportive family.  His family has

11   continued their support knowing of this offense and what

12   the outcome is going to be, which is clearly

13   incarceration.

14         But I think it's important for the Court to

15   understand that this conduct does not appear to have

16   been motivated by pedophilia, but motivated by premature

17   exposure to pornography that was pierced with

18   prepubertal sexual acting out.

19         As I discussed in my sentencing memo, your

20   Honor, there is a widespread agreement among judges and

21   courts that the guidelines for child pornography are

22   seriously flawed.  The sentencing enhancements produce a

23   sentence approaching the statutory maximum based solely

24   on characteristics that are all but inherent to a

25   crime's conviction and that approach is fundamentally

1    inconsistent with 18 U.S.C. 3553.

2           Most important -- I think the most important

3    issue other than the appropriate punishment and

4    deterrence is whether Mr. Benoit is amenable to

5    treatment so that this does not occur again and he does

6    not reoffend.

7           Dr. Guidry concluded that Mr. Benoit's

8    prognosis is positive and she wrote, quote:  His

9    responses suggest an acknowledgment of important

10   problems and the perception of a need for help in

11   dealing with these problems.  He reports a positive

12   attitude towards the possibility of personal change, the

13   value of therapy, and the importance of personal

14   responsibility.

15          In addition, she reports a number of other

16   strengths that are positive indications for a relatively

17   smooth treatment process and reasonably good prognosis.

18          While some incarceration obviously is

19   warranted and he has a mandatory minimum sentence, your

20   Honor, I believe that there is nothing in Mr. Benoit's

21   history or characteristics which should suggest that a

22   lengthy sentence is necessary or appropriate to achieve

23   the goals of sentencing.

24          I think the best way to determine what his

25   success will be is looking at how he has done while on

1   pretrial supervision, and he has complied with those

2   conditions.

3           I know my client would like to address the

4   Court and also his mother's here to address the Court as

5   well.

6           Would the Court like me to proceed with my

7   objections regarding the supervised release conditions

8   at this point?

9           THE COURT:  Yes.

10          MS. GRAHAM:  Thank you.

11          I would ask the Court to review *U.S. vs.*

12  *Pabon*, 819 Federal 3d 26 at 31, which is a 2016 case.

13  And there the Court said that similar to sex offender

14  treatment conditions, associational conditions may be

15  proper where the defense, one, has -- where the

16  defendant, rather, has recently committed a sexual

17  offense against a minor; or where the intervening time

18  between a prior sex offense and the present conviction

19  is marked by substantial criminal activity; or where the

20  defendant's conduct otherwise indicates an enhanced risk

21  to minors.

22          And I would suggest that those factors do not

23  exist in this case and, therefore, the conditions are

24  not reasonable or based in fact.

25          Regarding the restriction outlined in

1  condition number 1, which would restrict his contact

2  with his own children and also contact with other

3  children, my client has a -- one child, a four-year-old,

4  who's in the custody of his mother, but Mr. Benoit is 28

5  years old and he may in the future get married and have

6  more children.  To say that he cannot have any contact

7  with children without permission from probation is not

8  reasonably related to this offense and imposes a greater

9  deprivation of liberty than is necessary.  It would

10  potentially interfere with his ability and right to

11  raise his own children.

12          Again, I say that this is not reasonably

13  related because this is not a hands-on offense and

14  there's no evidence that Benoit abused his child or that

15  he poses a threat to his own child or future children.

16  In fact, the stepchild that was in the home was

17  interviewed by a child advocacy center and they

18  concluded that that child had not been subjected to any

19  assault or inappropriate behavior.

20          By allowing probation to decide whether to

21  permit contact between a parent and a child may seem

22  reasonable as a middle ground, but I think that, A,

23  there has to be some justification for imposing such a

24  condition and it also places a tremendous amount of

25  power in the probation officer's hands to determine

1  whether my client would have and should have contact

2  with his own children.

3          A restriction of any contact with anyone under

4  the age of 18 is highly restrictive and I would ask the

5  Court to amend that condition by allowing contact if

6  supervised by an adult who is aware of his conviction

7  and his status.  Why that's restrictive is because

8  basically that would prevent my client from maybe

9  attending any family event where children may be.  If

10 there is some supervision by an adult who's aware of his

11 conviction and status, then that would allow him to

12 share and to enjoy family and family events.

13         THE COURT:  But, you know, we're at the point

14 where he hasn't undergone any treatment of any kind.

15         MS. GRAHAM:  I -- yes, and --

16         THE COURT:  And so there's a -- there's a

17 risk, just based on the -- on the facts of this case.

18 And this is a condition that's not cast in concrete.  It

19 can be adapted and modified as time goes on based on --

20 on what develops in terms of his -- of his treatment and

21 his engaging in the appropriate programs.

22         MS. GRAHAM:  I understand, your Honor.

23         I think the -- the other restriction was the

24 total ban on going to parks, museums, or libraries.

25 Well, I don't think that probation specifically says

1  libraries, but I'm using a library as an example of not

2  being allowed to go to a public place where children may

3  be, because they're at the library reading books, really

4  infringes on my client's ability to have freedom of

5  movement and freedom to enjoy public spaces.

6          THE COURT:  As I understand it, counsel would

7  not disagree with adding a phrase to that requirement,

8  "without prior permission of the probation officer"?

9          MS. FITZGIBBON:  That's correct, your Honor.

10  I would have no objection to adding that.

11          THE COURT:  So any -- and, again, just so

12  you -- we're looking a number of years away --

13          MS. GRAHAM:  Yes.

14          THE COURT:  -- and the need for treatment and

15  we have to have some assessment as to how he's

16  responding to that treatment before we simply allow him

17  to go to parks and schools and playgrounds.

18          MS. GRAHAM:  I guess, your Honor, I just want

19  to distinguish the -- Dr. Guidry's evaluation as to

20  contact offenses versus his -- his risk of reoffending

21  online.  And I think that there is no evidence, at least

22  before the Court, I think, that he is inclined to engage

23  in any kind of sexual hands-on offense.  And I just

24  wanted to clarify that for the -- my position.

25          THE COURT:  All right.

1          MS. GRAHAM:  I think the final request, your

2     Honor, is to allow my client to use a computer and to

3     redefine the language proposed by probation.

4          We would ask that the Court allow him to use

5     the -- to use the Internet and computers for -- to

6     access the Internet so long as it was not for any images

7     or material as defined at 18 U.S.C. 2256.

8          In this day and age, most people get their

9     news online; they can take classes online; they do job

10    searches.  And I understand that the provision would

11    allow for permission by probation, but I think that

12    that's very restrictive and highly burdensome.  And if

13    the language could be switched to say he can have access

14    so long as it's not for unlawful or illegal purposes or

15    as defined in 18 U.S.C. 2256, that would alleviate any

16    concern that my client would be engaging in any online

17    activity that's not prohibited -- that's not

18    permissible.

19         THE COURT:  What's the government's response

20    to that?

21         MS. FITZGIBBON:  The government would object

22    to that, your Honor.  Of all conditions, it would seem

23    the restriction on Internet is appropriate in this case,

24    given the fact that the defendant's offense of

25    conviction is Internet-related and he used the Internet

1    to -- to gather so much illegal contraband.

2          Secondly, your Honor, as you've said, when the

3    defendant goes through sex offender treatment, there's

4    going to be all sorts of things that he's most likely

5    not allowed to access on the Internet, not just illegal

6    things, not just things in 2256, but, for instance,

7    gaming, chat rooms.  There are legal sites that have

8    photos of children that while not sexually explicit are

9    arousing to a person in sex offender treatment and I'm

10   sure the counselors would not want him in those.

11         So, again, your Honor, there will be software

12   to ensure that he's not engaged in illegal activity, but

13   there will also be -- not just illegal stuff; there will

14   be, I'm sure, Internet activities that citizens are

15   allowed to participate in that under his supervised

16   release and with his counseling will not -- he will be

17   prohibited from.

18         So, again, I think it's very important that

19   the probation officer is the one to sit with him -- and

20   of course Internet will have to be used for job searches

21   and news and that sort of thing, but it is the U.S.

22   Probation Office that should be setting the parameters

23   of what is permissible Internet use and then what is not

24   permissible for him as a person under supervised release

25   conditions.

1        THE COURT:  The *Hinkel* case, Ms. Graham, that

2    you quoted, and as you state in your memo, the Court

3    noted that broad -- broad restrictions were upheld where

4    the defendant used the Internet in the underlying

5    offense.  That's clearly the situation here.

6        Secondly, the defendant had a history of

7    improperly using the Internet to engage in illegal

8    conduct, clearly the situation here, over a period of

9    five years of lengthy involvement.

10       And, three, particular and identifiable

11   characteristics of the defendant suggested that such a

12   restriction was warranted.  The length of time, the

13   nature of the images and videos that were assembled over

14   the five years, clearly supports a restriction.

15       And, once again, as he engages in sexual

16   offender treatment, he will be guided by -- by the

17   counselors as to what he can and cannot do when it comes

18   to the Internet, but certainly at this point in time,

19   there's -- there's sufficient justification for that --

20   that restriction.  And it's not -- it's not an absolute

21   prohibition.  It's simply requiring appropriate

22   oversight prior to his engaging in Internet use.

23       MS. GRAHAM:  Understood, your Honor.

24       THE COURT:  All right.

25       MS. GRAHAM:  I really don't want to leave the

1    argument having, you know, teased out very minute

2    details because I think that that might benefit my

3    client in the sense that I -- I really would leave my

4    presentation -- would like to leave my presentation with

5    the Court understanding that my client has been

6    compliant; that he has been cooperative; that he has

7    been remorseful.  And I think that the evaluation taken

8    as a whole really emphasizes that my client is in a

9    position to be successful on supervised release if he

10   follows the treatment that will be provided to him.

11           THE COURT:  The -- as we know, using the

12   number of images to make an adjustment under the

13   guidelines has been a very controversial issue with

14   courts.  The courts have been concerned about -- about

15   how that is used and how it skews the guideline.

16           The other issue is in terms of the number of

17   images that were traded, do you agree -- does the

18   government agree it was a small number overall,

19   relatively speaking, with --

20           MS. FITZGIBBON:  That we know of, your Honor.

21           THE COURT:  Yeah.

22           MS. FITZGIBBON:  Because the undercover was

23   the one who was receiving it and then stopped.  But the

24   extent to which it went to other people is still

25   unclear.  We know of some.

1          THE COURT:  Because, I mean, that resulted in

2   a five-level enhancement, which is --

3          MS. FITZGIBBON:  Uh-huh.  Yes, your Honor.

4          THE COURT:  -- a significant enhancement, but

5   it appears from what I read here that -- that the -- the

6   number of images was -- what, was about 50, as I

7   recall --

8          MS. GRAHAM:  I believe the evidence --

9          THE COURT:  -- was it?

10          MS. GRAHAM:  -- that was provided in

11   discovery, which included my client's statement, was

12   that he believed either traded 50 or 100.  It was in

13   that --

14          THE COURT:  Yeah.

15          MS. GRAHAM:  -- that amount.

16          THE COURT:  So those are factors that can be

17   weighed in determining whether a variance is justified.

18          MS. GRAHAM:  Yes, your Honor.

19          And I would just -- I don't think I need to

20   restate the -- the further arguments made in my

21   sentencing memorandum, but specifically just that nearly

22   every child pornography case like this that comes before

23   the Court is going to be at the maximum end and that

24   just seems not to support, really, the goals of

25   sentencing.

1          My client has -- he's in class I, Criminal

2     History I, and I think that that's important as well to

3     emphasize to the Court.

4          If I could now ask my client's mother to come

5     up and address the Court.

6               THE COURT:  Yes.

7               Good morning, Ms. Benoit.

8               MRS. BENOIT:  Good morning, your Honor.

9          My name's Heather Benoit.  I am Zachary's

10    mother and I am here and have been with him in support

11    and ask for some leniency and the minimum sentencing for

12    the crimes that he has pled guilty to.

13         I am not in any way trying to minimize what he

14    has done.  I am well aware that he should and does have

15    consequences that he must face for his actions.

16         Up until his arrest in 2017, I have never

17    known him -- never had any problems as far as any

18    serious trouble, getting in trouble for anything other

19    than some traffic tickets.  Other than that, he's always

20    been responsible.  He's always been a hard worker and

21    helped around -- before he was old enough to actually

22    have a job -- helped at his great uncle's auto garage

23    when he was about 12 years old to start earning pocket

24    money.

25         When he was 15, I was diagnosed with breast

1    cancer.  During that time, my husband was on the road as

2    a truck driver and Zachary took care of his younger

3    brother, who was eight at the time, the house, myself,

4    and also worked part time.  I could not have ever gotten

5    through any of that without him and without everything

6    that he had done.

7              I want to assure the Court that Zachary

8    has his father's and my full support during his

9    incarceration as well as other family and friends.  And

10   afterward we are fully prepared to have him live with

11   us, which he has been doing since his arrest, and we

12   will encourage and stand by him as he does all that he

13   can to make amends for his actions.  I wholeheartedly

14   believe that Zachary is more than willing to do all that

15   he is capable of in order to reform.

16             Thank you for your time.

17             THE COURT:  Thank you, Ms. Benoit.

18             MS. GRAHAM:  Your Honor, my client --

19             THE COURT:  Mr. Benoit, yes.

20             THE DEFENDANT:  Your Honor, I am deeply

21   regretful and ashamed of my actions that have led me to

22   this day.  Not only am I sorry for my behavior, but for

23   the harm that I have caused to all that have been

24   affected by my crime.  By my actions I have caused harm

25   to all the victims by allowing these videos to continue

1   to circulate by my hand, which they did not deserve.

2           In all other aspects of my life, I have tried

3   to do my best and be a considerate and respectful

4   person.  I know that I have disappointed my family,

5   friends, myself -- and myself by making these offensive

6   choices and want to better myself by receiving --

7   receiving counseling and furthering my education while

8   incarcerated, after -- after my eventual release.

9           My goal is to earn back the trust of my family

10  and my friends, society, by working hard and never

11  repeating the actions that led me here today.

12           Thank you.

13           THE COURT:  Thank you.

14           Am I correct that counsel has agreed on the

15  restitution amount?

16           MS. FITZGIBBON:  Yes, your Honor.  Continuing

17  right up until yesterday, both Attorney Graham and

18  myself were talking to the victims' attorneys and

19  Attorney Graham has entered into agreements of what

20  would be acceptable and I would ask the Court to also

21  adopt that and order the restitution.  I believe she's

22  entered into agreements for $1,000 for each victim and

23  there are a total of nine victims.

24           MS. GRAHAM:  That's my understanding.

25           THE COURT:  Five, six, seven?

1             MS. GRAHAM:  There's only seven that's listed

2 in the PSR because we had not yet heard back from the

3 attorney on one of the -- or -- the attorney who

4 represented two other victims.  It would be a total of

5 nine.

6             THE COURT:  All right.  And what are their

7 names?

8             MS. FITZGIBBON:  So, your Honor, one involves

9 three victims in a series, so I can give you the -- the

10 series name was Sweet Sugar.  Those victims are Pia,

11 P-i-a, Ava, and Mya, M-y-a.

12             THE COURT:  Well, those are already listed

13 here.

14             MS. FITZGIBBON:  Oh, I'm sorry.

15             MS. GRAHAM:  Those are not -- I'm sorry.  If I

16 could just have a moment.

17             MS. FITZGIBBON:  If we could set that one

18 aside for a minute, your Honor.  I know I have the other

19 ones.

20             There is one called Tara, T-a-r-a.

21             THE COURT:  That's already here.

22             MS. FITZGIBBON:  Right.

23             MS. GRAHAM:  There's Maureen, who's in the

24 Lighthouse series.

25             MS. FITZGIBBON:  Uh-huh.

1            MS. GRAHAM:  And Sarah, who's in the
2   Marineland series.
3            THE COURT:  What was that name?  That isn't --
4   Sarah?
5            MS. GRAHAM:  So the first one, your Honor,
6   is -- Maureen's already included.
7            MS. FITZGIBBON:  Okay.
8            MS. GRAHAM:  Sarah, who is in the Marineland 1
9   series -- so Marine, M-a-r-i-n-e, land -- and Lily, who
10  is in the Vickie series.
11           THE COURT:  All right.  And the Court has
12  already approved the order of forfeiture which is
13  pursuant to the joint motion filed by counsel.
14           MS. FITZGIBBON:  Thank you, your Honor.
15           THE COURT:  With respect to the objections to
16  the supervised release conditions, the Court has
17  considered that they are appropriate because they --
18  they are reasonably related to the Section 3553(a)
19  factors; they do not involve any greater deprivation of
20  liberty than is necessary; and they're consistent with
21  the policy statements issued by the Sentencing
22  Commission under the facts of this case, which the Court
23  has already reviewed during its discussion with counsel.
24           The Court will -- with respect to
25  recommendation number 6, the Court will add the phrase

1  "without prior permission of the probation officer."

2  You must not go to or remain at any place where you know

3  children under the age of 18 are likely to be, including

4  parks, schools, playgrounds, and child care facilities,

5  without prior permission of the probation officer.

6            Mr. Benoit, please stand.  The Court will read

7  the sentence and if either counsel has a legal

8  objection, you can tell me what that is when I'm

9  finished.

10           Pursuant to the Sentencing Reform Act of 1984,

11 it is the judgment of the Court that the defendant,

12 Zachary Benoit, is hereby committed to the custody of

13 the Bureau of Prisons to be imprisoned for a term of 156

14 months.

15           The Court recommends that the defendant be

16 assigned to an appropriate sex offender treatment

17 program while incarcerated.

18           Upon release from imprisonment, the defendant

19 shall be placed on supervised release for a term of five

20 years.  Within 72 hours of release from the custody of

21 the Bureau of Prisons, the defendant shall report in

22 person to the probation office in the district to which

23 he is released.

24           While under supervision, he shall comply with

25 the standard conditions that have been adopted by this

1   Court and shall comply with the mandatory and proposed

2   special conditions attached to the presentence report as

3   amended by the Court.

4           The Court finds that the defendant does not

5   have the ability to pay a fine and waives the fine in

6   this case.

7           The Court finds that the following victims

8   have suffered injuries compensable under the Victim and

9   Witness Protection Act, Mandatory Restitution Act,

10  Violence Against Women Act, Crime Victims' Rights Act,

11  in the amounts indicated:  Jenny, $1,000; Jessica,

12  $1,000; Pia, $1,000; Ava, $1,000; Mya, $1,000; Maureen,

13  $1,000; Tara, $1,000; Sarah, $1,000; Lily, $1,000.  Any

14  payment that is not paid in full shall be divided

15  proportionally among the persons named.

16          Payments toward the criminal monetary

17  penalties are ordered to begin immediately.  Within 30

18  days of commencement of supervision, payments shall be

19  made in equal monthly installments of $100 during the

20  period of supervision and thereafter.

21          Upon commencement of supervision, the

22  probation officer shall review the defendant's financial

23  circumstances and, if necessary, recommend a revised

24  payment schedule on any outstanding balance for approval

25  by the Court.

1              It is ordered that the defendant shall pay to

2    the United States a special assessment of $200, due in

3    full immediately.

4              The Court finds that the defendant does not

5    have the ability to pay the Justice for Victims of

6    Trafficking Act assessment.

7              The order of forfeiture that has been entered

8    shall be made part of the sentence in this case and

9    included in the judgment.

10             The defendant is remanded to the custody of

11   the United States Marshal.

12             Does the government have any legal objection

13   to this sentence?

14             MS. FITZGIBBON:  No legal objections, your

15   Honor, but if I could just ask -- sometimes the names of

16   series and victims get a little confused --

17             THE COURT:  Yeah.

18             MS. FITZGIBBON:  -- and when I talked to

19   Attorney Hepburn, Lily and Vickie might be interchanged.

20   If I could just ask the Court to after Lily put Vickie

21   Series, because that is the agreement that we were

22   talking about.  So --

23             THE COURT:  So instead of Lily, put Vickie

24   Series?

25             MS. FITZGIBBON:  Yes, your Honor.  That's who

1  Attorney Hepburn represents and I spoke with --

2          THE COURT:  Do you agree with that,

3  Ms. Graham?

4          MS. GRAHAM:  That's fine.

5          THE COURT:  Is that satisfactory?

6          It's my obligation to inform you, Mr. Benoit,

7  that to the extent that there are any issues that can be

8  appealed, you do have the right to appeal this sentence

9  to the First Circuit Court of Appeals in Boston.  That

10  appeal must be taken within ten days of when judgment is

11  entered and if you cannot afford the costs of an appeal

12  or an attorney on appeal, then those will be provided

13  for you.

14          In imposing this sentence, the Court has

15  considered the government's recommendation of 168 months

16  and the defendant's recommendation of 60 months.  The

17  Court has considered the advisory guideline range and

18  the statutory factors and has imposed this sentence for

19  the following reasons:

20          One, transportation and possession of child

21  pornography are serious offenses which involve the

22  victimization and revictimization of children.

23  Therefore, an appropriate period of incarceration is

24  necessary, taking into account the particular facts of

25  this case.

1          Two, some of the material in this case

2     involved very young children and extremely sadistic

3     conduct, both of which are aggravating factors.

4          Three, using the number of images to make an

5     adjustment in the guidelines has been found by many

6     courts to be problematic.  The files which were traded

7     and which resulted in a five-level enhancement in this

8     case represent a small percentage of all of the images

9     found on the defendant's computer.  The Court has taken

10    these two factors into consideration in determining a

11    reasonable variance.

12          Four, the defendant has been engaged in this

13    conduct for approximately five years.  He became fixated

14    on child pornography; however, there's no indication

15    that during this time he had any contact sexual offense.

16          Five, the defendant was sexually abused as a

17    child and he sexually abused his sister.

18          He has no prior criminal record, has had a

19    good work history, has a substance abuse history that is

20    mainly comprised of marijuana use, and he has been

21    diagnosed with dysthymic disorder.

22          He has cooperated with law enforcement from

23    the beginning of the investigation.  He has been

24    compliant with conditions of his release and he has

25    strong family support.

1          Five, the defendant underwent a psychosexual

2    evaluation performed by Dr. Laurie Guidry.  Dr. Guidry

3    concluded that the defendant is currently best

4    understood as presenting a relatively low risk of

5    recidivating with a contact offense as he does not

6    present the factors consistent with those that would

7    indicate he represents an elevated risk to commit a

8    contact offense.  The doctor further concluded that the

9    defendant's risk of sexual reoffense by virtue of

10   committing an online sexual offense should be considered

11   elevated if untreated, but manageable if his

12   psychological vulnerabilities are adequately addressed

13   in treatment.

14          Dr. Guidry found that the defendant does not

15   present with an antisocial personality disorder.  She

16   recommends treatment and the Court has recommended

17   treatment.

18          Restitution is required and the Court has

19   accepted counsel's recommendations with respect to

20   restitution.

21          And, lastly, the sentence imposed is

22   sufficient, but not more than necessary, to punish the

23   defendant for this offense, to deter him and others from

24   committing similar offenses, to promote respect for the

25   law, to promote -- to protect society, and to take into

1    account the defendant's individual characteristics.

2              Are there any other issues that counsel would

3    like to take up?

4              MS. FITZGIBBON:  No, thank you.  Your Honor.

5              MS. GRAHAM:  May I have one moment, your

6    Honor?

7              THE COURT:  Yes.

8              MS. GRAHAM:  Your Honor, the one request I

9    have is for the Court to make a recommendation to the

10   Bureau of Prisons to place him at a facility closest to

11   New Hampshire, where his family support is.

12             THE COURT:  All right.  The Court will add

13   that recommendation to the -- the Court recommends to

14   the Bureau of Prisons that the defendant be assigned to

15   a facility either in New Hampshire or as close to

16   New Hampshire as possible so that he can be close to his

17   family.

18             MS. GRAHAM:  Thank you.

19             THE PROBATION OFFICER:  Your Honor, the

20   probation officer would like to modify paragraph 65 to

21   change the offense level as well as the --

22             THE COURT:  I can't hear you.  Would you

23   please speak up?

24             THE PROBATION OFFICER:  I'd like to change

25   paragraph 65 to change the total offense level to 35 and

1  also the guideline imprisonment range, which would go

2  with the other paragraphs earlier.

3              THE COURT:  Yes.  Well, I indicated earlier

4  that the -- you were to make changes in the report

5  consistent with the Court's finding.

6              THE PROBATION OFFICER:  Thank you, your Honor.

7              THE COURT:  Yes.

8              We are waiting for the marshal.

9              The defendant has been remanded to the custody

10 of the United States Marshal.

11             Court will be in recess.

12             (Proceedings concluded at 11:57 a.m.)

C E R T I F I C A T E


       I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.


Submitted: 5/22/19

*Liza W. Dubois*

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire